IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DON BILLUPS,                              )
                                          )
       Petitioner,                   )
                                          )          Civil Action No. 7:15-cv-597
    v.                            )
                                          )          By:  Elizabeth K. Dillon
HAROLD CLARKE,                            )                    United States District Judge
                                          )
       Respondent.                   )

**MEMORANDUM OPINION**

Petitioner Don Billups brings this 28 U.S.C. § 2254 habeas petition (Dkt. No. 1)

challenging his state convictions for sixteen offenses involving seven different child victims, for

which he received two life sentences plus seventy-five years' imprisonment.  Respondent filed a

motion to dismiss (Dkt. No. 9), and Billups has filed an amended response.  (Dkt. No. 21.)  Also

pending before the court are two additional motions filed by Billups, both of which seek to insert

several documents into the record.  (Dkt. Nos. 22, 24.)  The court will grant both of those

motions, and in reviewing Billups's petition, the court has considered the additional documents.

In his petition, Billups asserts a number of claims of ineffective assistance of counsel,

nearly all of which he raised in his state habeas petition, and most of which were rejected on

their merits by the Supreme Court of Virginia.  The court concludes that the Supreme Court of

Virginia's decision on the claims it addressed on their merits was neither contrary to, nor an

unreasonable application of, clearly established federal law and further concludes that the

decision was not based on an unreasonable determination of the facts.  The two remaining

claims, which were not included in his original petition and which the state court denied leave to

amend, are procedurally defaulted, and Billups has not shown excuse for that default.  For these

reasons, discussed in more detail below, the court will grant respondent's motion to dismiss Billups's petition. The court will also deny Billups a certificate of appealability.

## I. BACKGROUND

On November 15, 2012, after a three-day jury trial, the Alleghany County Circuit Court convicted Billups of all the offenses on which he was tried—sixteen offenses against seven different victims, all of whom were minors at the time of the offenses. Specifically, he was convicted of indecent liberties with J.S., L.C., A.H., O.F., and L.T., and indecent liberties on two separate occasions with K.T., all in violation of Virginia Code § 18.2-370.1; attempted indecent liberties with S.N., in violation of Code § 18.2-370 and § 18.2-26; aggravated sexual battery of A.H., O.F., and L.T., in violation of Code § 18.2-67.3; object sexual penetration of A.H. and O.F., in violation of Code § 18.2-67.2; assault and battery of S.N., in violation of Code § 18.2-57; and two counts of sexual battery of K.T., in violation of Code § 18.2-67.4.

All seven of the victims testified at trial, as did other witnesses who corroborated certain portions of the victims' testimony. Each victim testified about at least one incident between her and Billups, all of which took place between 2002 and 2012. For example, the jury heard evidence from the victims that Billups attempted to get one young girl to kiss him; that, while supposedly teaching a couple of victims to swing a golf club, he stood behind each one and rubbed his erect penis against her buttocks; that he fondled some victims in the genital area, over their clothing; and that he gave a massage to one victim. Two victims testified to even more egregious conduct: Billups had placed his hand up inside their underwear and inserted his finger in their vaginas. All of the Commonwealth's witnesses were cross-examined by Billups's attorneys, with the exception of one witness who offered limited testimony about one victim's earlier report of Billups's misconduct. Billups's attorneys also called witnesses in his defense,

Case 7:15-cv-00597-EKD-RSB   Document 25   Filed 09/30/16   Page 2 of 21   Pageid#: 2095

including his daughters and wife, and Billups elected to testify, as well. (*See generally* Trial Transcript, Dkt. No. 19-3 at 23 through Dkt. No. 19-6 at 130.)

After he was convicted and sentenced, Billups appealed his convictions to the Court of Appeals of Virginia, arguing two assignments of error. First, he contended that the trial court erred in denying his motion for a bill of particulars because the indictments were insufficiently detailed to allow him to prepare a defense. Second, he made a general insufficiency of the evidence claim, arguing that the district court erred in denying his motions to strike. (Dkt. No. 13 at 34.) The Court of Appeals denied his appeal on September 26, 2013. (*Id.* at 16–18.) The Supreme Court of Virginia subsequently refused his petition to appeal. (*Id.* at 22.)

Billups then filed a *pro se* habeas petition in the Supreme Court of Virginia, attacking the validity of his convictions. He raised essentially the same claims he has raised here (Dkt. No. 19-1 at 7), and the Supreme Court denied his petition. His federal petition lists the following three multi-faceted claims, which he elaborates on by incorporating portions of his state habeas petition by reference:

1. He was denied the effective assistance of counsel when his trial counsel failed to present certain evidence. Specifically, he claims counsel should have introduced evidence that four of the victims "conspired together" to create a story against him and that all of the victims had various motives to fabricate their accusations. (Dkt. No. 1 at 5 (also referring to pages 1 to 28 of his state habeas petition, Dkt. No. 1-6).) He also asserts that counsel should have presented additional evidence that showed he was helpful to a number of the victims, that some of them had contact with him even after the alleged abuse, and other facts that he contends show he did not commit the offenses.

2.      He was denied the effective assistance of counsel when counsel failed to subpoena witnesses Daylyn Tyree and Caitlyn Leity to testify that they overheard four of the victims discussing the need to "stick to the story" of the allegations against him. (Dkt. No. 1 at 6 (also referring to pages 29 to 32 of his state habeas petition).).

3.      He was denied the effective assistance of counsel when counsel failed to investigate various aspects of the case. In particular, he claims counsel should have investigated: (a) whether an expert medical witness could impeach the victims and discredit A.H.'s claim of abuse by showing that there was no evidence of abuse or assault; and (b) additional defenses and allegedly exculpatory evidence. (Dkt. No. 1 at 8 (also referring to pages 33 to 50 of his state habeas petition).) In another portion of this claim, Billups alleges that he had given certain documents ("exhibits A–Z") to one of his two trial attorneys, Mr. Armstrong. He claims that the other counsel, Ms. Harris—who Billups and his wife both describe as his "lead" counsel—was not aware of all the exhibits he had provided Mr. Armstrong because Ms. Harris only returned a portion of those to him when he asked for a copy of his file to appeal.

Although not listed as a separate ground in his federal petition, Billups argued in his state petition—and argues again here—that trial counsel's failure to maintain his file also prevented him from effectively pursuing his appeal and his state habeas. (Dkt. No. 1-6 at 49.) That allegation was treated as a separate, fourth claim (claim d) by the state habeas court. (Dkt. No. 8-1 at 5–6.) In his response to the motion to dismiss in this court, though, Billups clarifies that this argument was not intended as a separate claim, but is a part of his failure to investigate

claim.[1]  (Dkt. No. 21 at 3, 5.)  All of his claims, including this last one, were considered on their merits and rejected by the state habeas court.  (Dkt. No. 8-1 at 1–6.)

After respondent had filed his motion to dismiss the state habeas petition, Billups sought leave to amend his petition to add two additional ineffective assistance claims based on counsel's failure to: (1) present mitigating evidence during the sentencing phase of the case; and (2) investigate whether an ill juror received medical attention and whether her illness affected the deliberations or her ability to serve as a juror.  The Supreme Court of Virginia denied him leave to amend and thus declined to address those claims.  (Dkt. No. 8-1 at 6.)  Although respondent contends here that those claims have been "abandoned" and not raised before this court (Dkt. No. 11 at 4–5), Billups disagrees.  He believes he adequately asserted them, by including the state court's denial of his motion to amend and the substance underlying the claims as part of his petition here, despite the fact that they were not listed on his petition as a separate claim.  (Dkt. No. 21 at 3–6.)  He also appears to contend that they are sub-claims to his general "failure to investigate" claim, which is listed in the petition.

Petitioner's failure to list these claims specifically in his petition likely runs afoul of Rule 2 of the Rules Governing § 2254 proceedings, which requires a petition to "specify all the grounds for relief available to the petitioner" and which "must substantially follow" either the standard form in the rules or a local standard form.[2]  The standard form used by Billups also warns that he must list all of his grounds and that, if he has more than four, he should attach additional pages.

---

[1] According to Billups, what the state habeas court treated as claim d was labeled "D 16 A-C" on his handwritten sheet, but he intended to be part of claim c.  (*See* Dkt. No. 1-6 at 49, Dkt. No. 21 at 3, 4.)  For consistency's sake, this court will refer to the claim as a separate, fourth claim.

[2] Indeed, Billups's entire petition, which contains cross-references to voluminous exhibits (mostly portions of his state habeas petition) stating the bases for his claims, likely violates this rule.

5

But the court notes that these claims were also included as part of his "additional evidence" docketed in the case (*see* Dkt. No. 8-4), which the respondent has conceded is "properly before this [c]ourt." (Dkt. No. 11 at 5 n.5.) Moreover, the court is aware of its duty to liberally construe *pro se* filings, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and Billups couches those claims as part of his "failure to investigate" claim, which is referenced in the petition. Thus, the court will treat them as claims asserted in his federal petition. Even assuming they have been properly raised, however, these claims do not entitle Billups to relief.

Respondent has filed a motion to dismiss his petition (Dkt. No. 9), and Billups has filed an amended response (Dkt. No. 21; *see also* Dkt. No. 23 (order explaining various responses by Billups and notifying him that his second amended response will be considered as his sole response to the motion to dismiss).) As already noted, the court has also considered other documents filed by Billups as part of his motions to supplement and his addendum. (Dkt. Nos. 8, 22, 24.)

## II. DISCUSSION

### A. Standard of Review

When reviewing a habeas corpus petition challenging a state conviction, this court employs a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Deyton v. Keller*, 682 F.3d 340, 344–45 (4th Cir. 2012) (citation omitted). Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal habeas court may only grant habeas relief "with respect to any claim that was adjudicated on the merits" in state court if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the

6

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Deyton*, 682 F.3d at 345 (quoting same).

A state court decision is "contrary to" the Supreme Court's clearly established precedent if (1) the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] as a matter of law" or (2) the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Similarly, a state court decision constitutes an "unreasonable application" of clearly established federal law if the state court identifies the correct legal rule but unreasonably applies it to the facts of the particular case. *Id.* at 407. The "application must be 'objectively unreasonable'" before a court may grant habeas relief. *Renico v. Lett*, 559 U.S. 766, 773 (2010). Put differently, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Indeed, a federal court may not find "an unreasonable application of federal law unless the state court's decision lies well outside the boundaries of permissible differences of opinion." *Tice v. Johnson*, 647 F.3d 87, 108 (4th Cir. 2011) (internal quotation marks omitted). If the foregoing standard "is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Because all of Billups's claims are ineffective assistance of counsel claims, the court evaluates them under the familiar two-prong test delineated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 122–23 (2009) ("Indeed, this Court has repeatedly applied [the *Strickland* standard] to evaluate ineffective-assistance-of-counsel

claims where there is no other Supreme Court precedent directly on point."). Under *Strickland*, a successful claim for ineffective assistance of counsel must establish: (1) that counsel's performance fell below an objective standard of reasonableness, such that counsel was not acting as the counsel guaranteed by the Sixth Amendment; and (2) that, but for counsel's objectively unreasonable performance, there is a reasonable probability the outcome of the trial would have been different. 466 U.S. at 687–91. There is no need "to address both components"; rather, if a reviewing court determines that the petitioner's claim fails on either the performance or the prejudice prong, the court's inquiry may stop there. *Id.* at 697.

In fairly evaluating an attorney's performance, "judicial scrutiny . . . must be highly deferential," and so "every effort [must] be made to eliminate the distorting effects of hindsight . . . ." *Id.* at 689; *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008). Thus, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

To show prejudice, a petitioner must show that there is a "reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. The petitioner need not prove by a preponderance of the evidence that the jury's verdict would have been different, but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111–12.

As the Supreme Court has recently reaffirmed, the *Strickland* standard is "doubly deferential" in the context of a habeas petition because the deferential review under AEDPA overlaps with the deferential standard under *Strickland*. *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). Put differently, "federal

courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Woods*, 136 S. Ct. at 1151 (quoting *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013)).

Here, it is undisputed that the state court applied the correct legal standard—*Strickland*—to determine whether trial counsel provided effective assistance. Thus, in order to be granted relief as to the claims addressed by the state court, Billups must demonstrate that the state court's application of *Strickland* was unreasonable or that its decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). With these principles in mind, the court now turns to each of Billups's ineffective assistance claims.

### B. Claim One: Ineffective Assistance of Counsel Based on a Failure to Present Certain Evidence

In his first claim, Billups asserts that his counsel should have elicited certain testimony from the victims and others about their possible motives for bringing allegedly false accusations against him. His petition addresses each of the seven victims and sets forth what he believes counsel should have asked during cross-examination. He points to evidence that he claims would have shown that each victim had a motive to fabricate the accusations against him because she was actually upset about some other conduct, such as: (1) his failure to take some girls on a laser tag outing; (2) his delay in paying one victim for work she performed on his rental home; (3) his disciplinary style, both in his role as drill team instructor or at home with his daughters' friends; (4) his telling one victim to "shut up" during a drill team event; (5) his disciplining of another victim's twin brother; and (6) his refusal to allow his daughter to spend the night at one victim's house and the fact that he had lectured that victim about her fussing and being irritated. He also argues that four of the older girls, who knew each other, concocted the allegations against him as some sort of conspiracy for the things that upset them. Additionally, as to some of the victims, he claims that they were in his presence or at his home after the alleged abuse,

which he says undermines their claims that he touched them inappropriately. He also points out various "appropriate interactions" that he had with them.

In denying various portions of this first claim, the Supreme Court of Virginia repeatedly reasoned that the different portions of the claim satisfied neither the performance nor the prejudice prong of *Strickland*. (Dkt. No. 8-1 at 1–2.) It explained the evidence, in some detail as to some of the victims, and noted that there was not a reasonable probability that evidence as to all these possible motives would have resulted in a different verdict. For example, it noted that one of the victims was observed by her father as visibly upset when she returned home from a visit to Billups's house. Although her father repeatedly asked her why she was upset, she did not say anything. Shortly thereafter, she developed behavioral and physical problems, including urinating on herself, having nightmares, and being fearful of men and crowds. The habeas court reasoned that "[c]ounsel could reasonably have determined [that] evidence that petitioner, who had volunteered to instruct the church's children's drill team, had scolded [the victim] during a drill team event, had promised to take the children on a Lazer Tech outing, and had reneged on that promise, would not have swayed the jury to believe [the victim] had fabricated her allegation of abuse out of animosity toward petitioner." (*Id.* at 4.) The court also pointed out that the deficiency prong could not be satisfied because much of the evidence had the potential of being "double-edged" and such tactical decisions are left to the sound discretion of counsel. (*Id.* at 2–3 (citing *Strickland*, 466 U.S. at 689–90, *Lewis v. Warden*, 645 S.E.2d 492, 505 (Va. 2007).)

The court has carefully reviewed the trial transcript, as well as the testimony Billups contends could, and should, have been introduced. The court notes that at least some of the evidence Billups points to was, in fact, elicited at trial. For example, several of the older girls were asked whether they fabricated the allegations against Billups. Also, the jury heard that

Billups had disciplined one victim's twin brother and that one victim had not been timely paid for her work.  Additionally, Billups himself testified at trial as to a number of his "appropriate interactions" with the girls.  As trial counsel subsequently explained, counsel "fully investigated avenues relative to motives of the complaining witnesses and made attempts to include that information in the trial as best as could be accomplished."  (*See* Dkt. No. 19-6 at 135, Harris Aff.)

Furthermore, with regard to much of the evidence, there is no showing of deficiency because of the potential of double-edged evidence, as the habeas court explained.  Indeed, in response to Billups's state habeas petition, the respondent offered the affidavit of Ms. Harris, one of the two defense attorneys at trial,[3] in which she explained that counsel had concerns about admissibility and other issues regarding many of these topics of evidence and made clear that it was a strategic decision as to which of this evidence to use.  (*See generally* Dkt. No. 19-6 at 132–36, Harris Aff.)  Regardless, Billups has not shown a reasonable probability that the outcome of the proceeding would have been different, had any or all of this evidence been presented.

Based on the entirety of the record, then, the court cannot conclude that the state court's application of *Strickland* to Billups's claim was objectively unreasonable, nor can the court conclude the decision was based on an unreasonable determination of the facts.  Accordingly, Billups is not entitled to relief on his first claim.

### C.  Claim Two: Ineffective Assistance of Counsel Based on a Failure to Call Witnesses to Testify About An Alleged Conspiracy

In his second claim, Billups argues that his counsel was deficient for failing to call as witnesses two high school students who purportedly overheard four of the victims "conspiring"

---

[3] The second, Mr. Armstrong, was deceased at the time Billups filed his state habeas petition.

against him in the school, by one of them directing another to "stick to the story."  The habeas

court denied his claim, explaining:

> [Billups] failed to provide any support for his claim that [the two
> witnesses] would have been willing and able to testify as petitioner
> contends.  Furthermore, the record, including the trial transcripts,
> demonstrates that trial counsel asked L.C. on cross-examination
> whether L.C. told any of the victims to "stick with your story,"
> "stick with their story," or "stick with her story."  L.C. denied
> having done so.  On redirect, the Commonwealth followed up on
> this line of inquiry, asking L.C. if she and the other victims had
> gotten together and decided to "make-up a story about" petitioner
> or if she and the other victims had any reason outside of the abuse
> to dislike petitioner.  L.C. denied any conspiracy to fabricate
> charges against petitioner or having any motive for doing so.  J.S.
> testified both L.C. and K.T. had encouraged her to "stick with your
> story," but explained she and the other victims were simply
> supporting each other and denied lying about petitioner.  K.T., like
> L.C., denied that she and L.C. and J.S. had decided "to all get
> together and come up with some kind of story to get" petitioner.
> Petitioner alleges no facts indicating the victims' responses would
> have been different if counsel asked if L.C. told K.T., J.S., or S.N.
> to "stick with the story."  Thus, petitioner has failed to demonstrate
> that counsel's performance was deficient or that there is a
> reasonable probability that, but for counsel's alleged errors, the
> result of the proceeding would have been different.

(Dkt. No. 8-1 at 2.)

As suggested in the first sentence of the above explanation, the mere fact that Billups

failed to present affidavits from the two witnesses as to what their testimony would have been is

fatal to this claim.  *Hill v. Clarke*, No. 1:15-cv-810, 2016 WL 754500, at *5 (E.D. Va. Feb. 22,

2016) (noting that "[b]oth Virginia and federal courts recognize the principle that failure to

provide an affidavit to verify the testimony of a missing witness is fatal" to an ineffective

assistance claim based on a failure to call a witness, and collecting authority).  Tellingly,

moreover, counsel's affidavit states that those witnesses—who counsel interviewed—would

have given unfavorable testimony and thus that "the risks far outweighed any negligible benefit

that the witnesses could provide."  (Dkt. No. 19-6 at 135.)  Particularly given the "doubly deferential" standard applicable here, counsel's strategic decisions about which witnesses to call are not subject to question.  In short, the reasoning of the habeas court as to both deficiency and prejudice is apt and is not an unreasonable application of the *Strickland* standard.  Nor was the state court decision based on an unreasonable determination of the facts.

Accordingly, the court will deny Billups's second claim, as well.

### D.  Claim Three: Ineffective Assistance Based on a Failure to Investigate and Failure to Present Additional Mitigation Evidence

Portions of Billups's third claim contain arguments similar to those set forth in his first claim concerning the victims' alleged motives for fabricating their claims.  Those arguments were addressed as part of the first claim.  Billups also contends that a thorough investigation by counsel would have revealed certain mitigating evidence, such as the fact that another girl had stayed with his family every summer for years, and that no sexual contact or harassment by Billups occurred.  He also claims counsel should have shown that he was a strict disciplinarian despite the fact that it might put him in the position of others becoming vindictive or vengeful toward him.  In another portion of this claim, he asserts that his counsel should have investigated and presented evidence either from medical experts or counselors to determine if there was any evidence of abuse or assault of the victims.

The state habeas court evaluated separately each portion of Billups's third claim, styled as a failure to investigate, and, as to each, concluded that Billups failed to satisfy both of the *Strickland* prongs.  As recognized in *Strickland* itself, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  466 U.S. at 691, *quoted in Christian v. Ballard*, 792 F.3d 427, 446 (4th Cir. 2015); *see also Wiggins v. Smith,* 539 U.S. 510,

533 (2003) (holding, in context of ineffective assistance at sentencing, that "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant").

The court has reviewed the habeas court's reasoning and finds that there is no basis for granting habeas relief on this claim. The habeas court's application of *Strickland* to the various allegations concerning counsel's failures to investigate was not unreasonable, and its decision was not based on an unreasonable determination of the facts. Accordingly, this claim will be denied.

### E. Remaining Portion of Claim Three and Claim Four: Trial Counsel's Failure to Share File with Co-counsel and to Maintain the File

In another portion of claim three, Billups argues that he gave certain exhibits (Exhibits A–Z) to one of his attorneys, Mr. Armstrong, but that the other attorney, Ms. Harris, only returned some of those exhibits to Billups. He states that Harris was his "lead" attorney and suggests that Harris was never given the other documents. He claims that his defense was hampered by this and that his counsel was constitutionally ineffective. The habeas court rejected this claim, in part because the trial transcripts reflected that both attorneys were present throughout the entire trial, and Billups failed to offer any explanation as to why it was necessary for Harris to have those documents when Armstrong was also present. (Dkt. No. 8-1 at 5.) It also rejected the claim because Billups failed to proffer what the information in those exhibits was or to show how it would have assisted his attorneys in his defense. (*Id.*) The habeas court thus concluded that Billups had failed to satisfy *Strickland*. The court agrees that Billups cannot establish prejudice under *Strickland*. So, even if counsel was deficient in failing to maintain the file, it was not unreasonable of the state court to conclude that Billups had failed to state a claim

under *Strickland*, nor was the decision based on an unreasonable determination of the facts. Accordingly, this portion of claim three is denied.

With regard to Billups's claim that his counsel's failure to return the entire file to him affected his ability to prepare both his appeal and his state habeas petition, the habeas court noted that Billups failed to satisfy the prejudice prong of *Strickland* as to this claim. Its application of *Strickland* was not objectively unreasonable. As the habeas court explained, Billups "fail[ed] to proffer the contents of the documents labeled 'N–Z' and how the documents would have altered the outcome of his direct appeal." (Dkt. No. 8-1 at 6.) The same is true of his claim related to his habeas proceeding. He does not show a reasonable probability that the exhibits would have changed the result of his habeas petition. For the above reasons, these claims, too, will be denied.

### F. Claims Regarding Counsel's Failure to Present Mitigating Evidence at Sentencing and to Investigate the Issue of the Ill Juror

As to Billups's final claims, they are in a different procedural posture. The Supreme Court of Virginia did not address those claims; it simply denied Billups leave to amend his petition to add them, but without an explanation. (Dkt. No. 8-1 at 6.) The court must determine, therefore, if they have been properly exhausted because "[a] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999)). A petitioner must present his claim "face-up and squarely" to the state court. And "[m]eaningful exhaustion is that which accords with the state's chosen procedural scheme." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994)).

Based on the facts of this case, the court concludes that Billups did not properly exhaust these claims. First of all, it is undisputed that Billups's original—and timely—state habeas petition did not include the claims. It is further clear that the motion to amend, in which Billups raised the claims for the first time, was not a timely filing of those claims. In Virginia, a prisoner must bring a specific challenge in a habeas claim "within two years from the date of final judgment in the trial court, or within one year from [the] final disposition of the direct appeal in state court." Va. Code Ann. § 8.01-654(A)(2). Here, the additional claims were asserted for the first time in Billups's motion to amend, which was filed on September 9, 2015. (Dkt. No. 19-7 at 58.) This date was outside of the deadlines set forth in Code § 8.01-654(A)(2).[4] Thus, it is plain that the claims were not timely asserted in accordance with Virginia's procedural scheme.

The question before the court, therefore, is whether a petitioner properly exhausts claims where he fails to include them in his original state habeas petition, but then files a motion to amend the original petition, after the time for filing the claims has otherwise expired. In addressing this question, *Castille v. Peoples*, 489 U.S. 346 (1989), is instructive. In *Castille*, the court held that a federal claim was not exhausted even though it had been presented to the state court in a petition for allocatur in the Pennsylvania Supreme Court, which had been denied without opinion. The *Castille* court relied on the fact that, "[u]nder Pennsylvania law, such allocatur review 'is not a matter of right, but of sound judicial discretion, and . . . will be allowed only when there are special and important reasons therefor.'" *Castille*, 489 U.S. at 347 (quoting Pa. R. App. P. 1114). It further held that the exhaustion requirement is not satisfied when a claim is "presented for the first and only time in a procedural context in which its merits will not

---

[4] Final judgment was entered by the circuit court on February 28, 2013, and his petition for appeal was denied by the Supreme Court of Virginia on April 3, 2014, more than one year and five months before he first raised these claims.

be considered unless there are special and important reasons therefor." *Id.* at 351 (internal quotation marks omitted).

The court has found two cases within the Fourth Circuit that also support its conclusion that Billups's inclusion of untimely claims in a motion to amend before the state habeas court does not constitute proper exhaustion. The first is *Orbe v. True*, 233 F. Supp. 2d 749, 761–62 (E.D. Va. 2002), *aff'd*, 82 F. App'x 802 (4th Cir. 2003). In *Orbe*, the petitioner had filed an overlength habeas petition that included various claims. 233 F. Supp. 2d at 760–61. When he filed a shortened petition to comply with the court's strict page requirements, he also filed a motion to amend to add one group of claims that were not in his shortened petition. *Id.* at 761. The state court denied the motion to amend without comment and did not address the merits of any of the claims proffered in the motion to amend. *Id.* On these facts, the court concluded that Orbe had not properly exhausted his state remedies and that the claims were procedurally defaulted. *Id.* at 764.

Relying on *Castille* and *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999), the *Orbe* court explained:

> the fact that a state court has been physically presented with the claims in a pleading or motion does not necessarily mean that those claims were properly presented; the petitioner must avail himself of the "established appellate review process," and not rely solely on "extraordinary" procedures that require "special and important reasons" before the state court will reach the merits of the claims.

*Orbe*, 233 F. Supp. 2d at 761 (citations omitted). The *Orbe* court noted that, although Orbe's motion was technically in the form of a motion to amend, it was in effect a motion to exceed page limitations. Unlike motions to amend, which *Orbe* recognized as being "liberally granted," the page limitation for briefs in the Supreme Court of Virginia was a routinely-enforced rule,

"not a mere discretionary guideline." *Id.* at 762. Thus, barring an extraordinary decision to disregard its page-limits rule, "the state court had no opportunity to reach" Orbe's claims. *Id.* at 763.

As in *Orbe*, the motion to amend before the habeas court here seems designed to circumvent certain procedural requirements, including the requirement that all claims be asserted in a single petition and within the statute of limitations. Thus, in order to grant the motion to amend, the habeas court would have had to engage in an "extraordinary decision" to ignore the state's statutory limitations on habeas claims. Indeed, federal courts in Virginia have noted that Virginia courts regularly enforce the requirement that habeas claims be timely filed. *See, e.g., Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006). So, while the *Orbe* court may be correct that motions to amend are often granted, they are regularly denied (or at least the claims are denied) when granting such a motion would allow a habeas petitioner to add an otherwise untimely claim. *See, e.g., Fisher v. Angelone*, 163 F.3d 835, 846 (4th Cir. 1998) (noting that the habeas petitioner's motion to amend to add a claim was denied because the claim was untimely); *Juniper v. Warden of Sussex I State Prison*, 707 S.E.2d 290, 295–96 (Va. 2011) (holding that where petitioner was appointed new counsel and then granted leave to file an amended petition, but the new petition attempted to add a new, untimely claim, the claim was barred). *Cf. Dorsey v. Angelone*, 544 S.E.2d 350, 352–53 (Va. 2001) (Lemons, J., concurring) (noting that the court had previously permitted the amendment of a habeas petition to add new claims, but only "so long as the statute of limitations had not expired").

The second case that supports the court's conclusion is *Edwards v. Johnson,* No. 2:10-cv-339, 2010 WL 5825427 (E.D. Va. Dec. 14, 2010), *report and recommendation adopted by* 2011 WL 642711 (E.D. Va. Feb. 11, 2011). Seizing on *Orbe*'s distinction between motions to amend

and a motion to exceed page limitations, the magistrate judge in *Edwards* reasoned that, where a motion to amend a state habeas petition was filed but denied, the claim was properly exhausted. 2010 WL 5825427, at *5–6. In *Edwards*, though, the court specifically noted that the facts underlying the claims the petitioner sought leave to add were not known to the petitioner at the time his first petition was filed, nor does it appear to this court that there was any issue with their timeliness. *Id.* at *6 n.4. Thus, unlike the claims Billups sought leave to add, Edwards' claims were not procedurally barred under state law, so granting leave to amend would not have been extraordinary.

Furthermore, as a practical matter, to treat these claims as exhausted would allow any petitioner who neglected to bring claims in his timely petition to simply file a motion to amend to add additional, untimely claims to properly exhaust. Those claims would then be addressed in federal court under a more lenient standard of review than if they had been brought in a timely state petition and addressed on the merits.[5] That would reward petitioners for failing to comply with state procedural rules, which is contrary to the purpose of the exhaustion requirement. For all of these reasons, the court concludes that Billups failed to exhaust these claims.

It further appears to the court that these claims should be properly treated as simultaneously exhausted and procedurally defaulted. "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to state court." *Baker*, 220 F.3d at 288; *see Gray v. Netherland*, 518 U.S. 152, 161 (1986). If Billups were to attempt to raise these claims to the Supreme Court of Virginia now, that court would find that the

---

[5] Where the state courts do not reach a properly-exhausted claim's merits and rule instead on procedural grounds, the claim is reviewed de novo. *Winston v. Kelly*, 592 F.3d 535, 553–54 (4th Cir. 2010) ("When a claim has not been adjudicated on the merits by the state court, a federal court reviews the claim de novo."); *Bostick v. Stevenson*, 589 F.3d 160, 163 (4th Cir. 2009).

claims are procedurally barred.  *See* Va. Code § 8.01-654(B)(2) (requiring habeas petitioners to

raise all available grounds for relief in their first state petition for a writ of habeas corpus),

§ 8.01-654(A)(2) (state habeas statute of limitations).  Consequently, Billups' claims are now

simultaneously exhausted and procedurally defaulted and, thus, barred from federal habeas

review.  *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Basette v. Thompson*, 915 F.2d 932, 937

(4th Cir. 1990); *Sparrow v. Dir., Dep't. of Corr.*, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006).

A state prisoner can obtain federal habeas review of a procedurally defaulted claim if he

shows either (1) cause and prejudice or (2) a miscarriage of justice.  *Coleman v. Thompson*, 501

U.S. 722, 750 (1991).  To establish cause, a petitioner must identify "some objective factor

external to [his] defense" that impeded him from raising his claim at an earlier stage.  *Murray v.

Carrier*, 477 U.S. 478, 488 (1986).  A petitioner must then show prejudice by demonstrating that

the alleged constitutional violation worked to his actual and substantial disadvantage, infecting

his entire trial with error of a constitutional magnitude.  *Id.* at 494.  The "miscarriage of justice"

exception is a narrow one, requiring a habeas petitioner to demonstrate that a constitutional

violation has "probably resulted" in the conviction of one who is "actually innocent" of the

substantive offense.  *Id.* at 496.  Billups has identified no reason why he could not have filed

either of these claims in a timely fashion.  In fact, the claims relate to the performance of counsel

at trial and at sentencing, and Billups does not argue that he did know the factual or legal

predicates of these claims when he filed his first petition.  Nor has he shown prejudice under the

standard set forth in *Murray*.  Furthermore, he has not explained or shown how these alleged

failures of counsel resulted in a "miscarriage of justice" so as to satisfy that narrow exception.

Thus, the court concludes that these claims are procedurally barred from review here.[6]

---

[6] Even if the claims were properly before this court, Billups is not entitled to relief as to either claim.  First,
as to his claim that counsel failed to present mitigating evidence at sentencing (*see* Dkt. No. 8-4 at 2), he cannot

## III. CONCLUSION

For the foregoing reasons, the court will grant respondent's motion to dismiss and dismiss Billups's § 2254 petition. An appropriate order will be entered.

Entered: September 30, 2016.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

establish at least the prejudice prong of *Strickland*. He contends that his attorneys should have presented additional mitigation evidence at sentencing concerning his community outreach and other good works by him. Most of this supposed mitigation evidence, however, is the same type of "double-edged" evidence that he argues his attorneys should have presented at trial. Indeed, nearly all of his "contributions" and "community outreach" involve youth. (*See* Dkt. No. 19-7 at 73–74.) For example, he lists the good things he has done as including: sponsoring a high school team's basketball breakfast, sponsoring tent sleepovers, creating children's rifle drill teams, taking area kids on various outings, sponsoring contests for children, and sponsoring a kite-flying day for a daycare business. (*Id.*) The jury—who had just found him guilty—could have just as easily concluded that many of these efforts at what he describes "community outreach" were, in fact, efforts to obtain access to, and the trust of, children he could then molest. Indeed, some of these very types of events were tied in with the alleged abuse of the victims. He knew one of his victims through the drill team, for example, and his conduct toward others occurred during a sleepover, a team breakfast, and an outing with kids. For these reasons, it was a reasonable strategic choice by counsel not to present such evidence at sentencing. *Strickland*, 466 U.S. at 689–90. Furthermore, the court does not find a "reasonable probability" that the outcome of the sentencing would have been different had counsel presented this evidence.

Billups's second claim is that his counsel was ineffective for failing to investigate whether a juror who was ill at several points near the end of the trial was examined by medical personnel, and for failing to evaluate the effect, if any, of the juror's illness on her ability to serve as a juror and on the jury's deliberations. (Dkt. No. 19-7 at 60–71.) The court finds that this claim cannot satisfy *Strickland*'s prejudice prong for several reasons. First, it is unclear what any additional investigation by counsel would have revealed. But, in any event, the parties were aware of the ill juror and, at several points, the presiding judge inquired with the jury to ensure that the illness did not affect the deliberations and that the juror could adequately continue to serve. Furthermore, counsel moved to set aside the verdict and made specific reference to the ill juror as one of the grounds for the motion, arguing the point. The court denied that motion and specifically addressed the question of the ill juror. (*See generally* Dkt. No. 19-7 at 86.) This court simply cannot find a reasonable probability that, had counsel conducted some unspecified investigation with indeterminate results, the outcome of Billups's case would have been different.